IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR CASE NO: 1:09-cr-188-MEF |
| | ) | |
| STEVEN MICHAEL CAPSHAW | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the Court is Defendant's Motion to Suppress (Doc. #39), two Supplements (Docs. #44, 46) to the Motion, and the United States' Response (Doc. #47) thereto. On February 11, 2010, the Court held a hearing on Defendant's Motion, at which witnesses and argument were presented and exhibits entered into evidence. Defendant seeks suppression of "privileged documents that were seized during the search of his residence." Def.'s Mot. (Doc. #39) at 1. Specifically, Defendant contends that, while "the government may obtain the information improperly seized from other sources and introduce[ it] at trial after it is independently obtained," the United States "should be precluded from referencing at trial [that] the information was also seized at [Defendant's] residence." *Id.* at 3. Upon consideration of the Motion and the evidence and testimony adduced at the evidentiary hearing, the undersigned RECOMMENDS that the motion be DENIED.

**I.    BACKGROUND**

On October 30, 2009, a criminal Complaint was filed which alleged that, on October 29, 2009, Defendant did "travel and cause another (including the intended victim) to travel in interstate or foreign commerce, and use and cause another (including the intended victim)

to use the mail and any facility of interstate and foreign commerce, with intent that a murder be committed in violation of the laws of any State and the United States as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value" in violation of 18 U.S.C. § 1958. Complaint (Doc. #1). On November 18, 2009, a one-count Indictment was returned which charged that, from October 1, 2009, through October 30, 2009, Defendant "did use and cause another to use a facility of interstate commerce, to wit: a telephone, with the intent that the murder of an adult female, S.C., be committed in violation of the laws of the State of Alabama, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value" in violation of § 1958. Indictment (Doc. #30). On January 13, 2010, Defendant filed the instant motion.

## II.   OPERATIVE FACTS

Based on the parties' briefs and the witnesses and argument presented at the hearing before the undersigned, the pertinent facts surrounding the search and seizure at issue in this case are as follows:[1]

In August of 2009, Defendant's relationship with his wife S. C. deteriorated and S.C. moved out of their residence in Dothan, Alabama, and into an apartment. Defendant continued living at the couple's marital residence along with the couple's minor son.

---

[1] The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

Divorce proceedings were initiated at the end of August. As of the time of the hearing on Defendant's Motion, there had been no final resolution of the divorce proceedings. Hence, the couple's property interests had not been finally distributed at all times relevant to the Motion.

On October 30, 2009, Defendant was arrested pursuant to the charges described above. After Defendant's arrest, S. C. resolved to move back into the residence in order to care for the couple's minor son and limit the disruption of his life accompanied by the arrest of Defendant.[2] Upon moving back into the residence in early November, S. C. began the task of organizing and generally straightening-up the residence to her liking. Specifically, S. C. was concerned with identifying bills that needed to be paid at the beginning of the month. Within a couple days, S. C. set about organizing a desk in the living room, upon which a number of papers were scattered or "piled." Tr. (Doc. #62) at 10. In so doing, S. C. discovered a document which appears to be in the nature of an employee benefits summary pertaining to S. C. Gov.'s Ex. 1. This document indicates that S. C. is the covered employee and lists the various health and life insurance plans in which S. C. participates, whom the various plans cover, the amount of S. C.'s employee-paid premiums for each plan, and the designated beneficiary for S. C.'s two life insurance plans.[3] The document was

---

[2] Although S. C. had vacated the house and Defendant had subsequently changed the locks on the doors, S. C. was still a signatory on the home mortgage and she was physically allowed back into the home by her minor son, who possessed a key to the new locks.

[3] The two life insurance policies described on the form which cover S. C. total $253,000 in benefits and list the primary beneficiary as Defendant.

accessed on October 1, 2009, at 5:59 p.m.,[4] and printed from an internet portal accessible to employees upon entering certain identifying and validating information.[5] The document was lying on the desk among other papers when S. C. discovered it.

In the two days leading-up to the arrest of Defendant, S. C. was in intermittent contact with Dothan Police Department ("D.P.D.") investigators and, after the arrest of Defendant, FBI Special Agent Donald M. Van Hoose. S. C. did not discuss with the D.P.D. or Agent Van Hoose her plan to move back in to her former residence and she was not advised to locate items of potential evidentiary value to investigators. After S. C. discovered the employee benefits summary, she advised Agent Van Hoose of her discovery of the form. On November 9, 2009, Agent Van Hoose obtained a search warrant for the residence. In the application in support of the warrant request, Agent Van Hoose described S. C.'s discovery of "a printout of a life insurance policy on her that appeared to be have been printed form the computer maintained in the residence" that "was printed on October 1, 2009." Affidavit, Gov.'s Ex. 3C at ¶ 23.[6] This document was further included in the inventory of items to be sought during the search of the residence under the rubric of

---

[4] S. C. revealed in her testimony that she had the beneficiary of the two life insurance plans changed, to the exclusion of Defendant, on October 7, 2009.

[5] S. C. speculated that Defendant likely accessed her account using her login information which she likely left in a rolodex after she vacated the residence. S. C. also denied that she had produced the document and provided it to Defendant or his attorney pursuant to some request for disclosures related to the couple's ongoing divorce proceedings.

[6] Agent Van Hoose also described interactions between Defendant and witnesses in which Defendant discussed life insurance proceeds as a means of paying those involved in the planned murder of S. C. Affidavit, Gov.'s ex. 3C at ¶¶ 15, 19

4

"Financial records and documents to include bank statements, deposit documents, withdrawal documents, and insurance records." Attach. B to Affidavit, Gov.'s ex. 3C, at ¶ 4.

On November 10, 2009, Agent Van Hoose executed the search warrant. At the time the warrant was executed, S. C.'s minor son, her adult adopted son, and her friend, George Bridges, were at the residence. Upon Agent Van Hoose's arrival at the residence, Mr. Bridges greeted Agent Van Hoose in the yard and received copies of the paperwork authorizing the search. Special Agent William Beersdorf entered the residence to take photographs prior to the search. Afterward, Agent Van Hoose, Agent Beersdorf, and Special Agent Chad Yarbrough entered the residence and were presented, by Mr. Bridges, with a folder that contained the summary of benefits printout and other documents which had been described to Agent Van Hoose and included in the description of various documents in the application for search warrant. Neither Agent Van Hoose nor his associates recovered the benefits summary printout from the desk where S. C. originally located it.

### III.   DEFENDANT'S ARGUMENT

In his Motion, Defendant contends that the United States should be precluded from "use at trial privileged documents that were seized during the search" of his residence. Def.'s Mot. (Doc. #39) at 1. Defendant argues that "during the search law enforcement officers seized an envelope from attorney Joel M. Nomberg, Esq., to [Defendant] that

contained privileged correspondence between [Defendant] and his attorney."[7]  Def.'s Mot. (Doc. #39) at 3.  Defendant's Supplemental briefs make clear that the allegedly privileged document he seeks to suppress is Defendant's "wife's life insurance policy."  Def.'s Supp. Brief (Doc. #44) at 3; Def.'s Supp. Brief (Doc. #46) at 2.  Defendant appears to contend that the summary of benefits printout evidencing the existence of the life insurance policies was "sent to [Defendant] by his attorney in connection with divorce proceedings," Def.'s Supp. Brief (Doc. #46) at 2, and that, therefore, "the context in which the policy was sent and received by [Defendant] was a privileged and confidential communication between [Defendant] and his attorney."  Def.'s Supp. Brief (Doc. #44) at 3.  Hence, Defendant asserts, "[a]s [Defendant] is the holder of the privilege and does not waive it, this information was not subject to seizure as it was not subject of the search warrant nor the product of crime fraud exception to the attorney client privilege."  Def.'s Supp. Brief (Doc. #44) at 3.

## IV.  DISCUSSION

Defendant's argument is predicated upon facts which are not in evidence.  Defendant presented no testimony or other evidence at the suppression hearing which indicated that the summary of benefits printout was found in an envelope bearing Attorney Nomberg's name or otherwise constituted a communication with his attorney for purposes of his divorce

---

[7]  Attorney Nomberg apparently was retained by Defendant for purposes of his divorce proceedings against S. C.

6

proceedings. Nor did Defendant persuasively rebut the Government's evidence that the printout was simply discovered by S. C. among other papers on the desk, described to Agent Van Hoose, included in the warrant application, and then handed over to him during the search of the residence.

Defendant effectively conceded that his motion should fail absent a showing that the printout was seized despite circumstances which clearly indicated it was part of some attorney-client communication. *See* Trans. (Doc. #62) at 39-40, 42-43. However, Defendant nevertheless failed to present such evidence.[8] Having failed to present any evidence of a privileged attorney-client communication in support of his theory of suppression, at the close of the hearing Defendant could only implore the Court "that it can be implied" that such a communication occurred given that a copy of the complaint for divorce was seized from the desk and "the dynamics of what was taking place" at that time. Trans. (Doc. #62) at 76-78. However, the Court can not accept Defendant's invitation to find in his favor on the one essential fact upon which his motion turns where all evidence adduced at the hearing dictates a contrary finding.

Defendant's claim that the summary of benefits printout was seized in violation of the Fourth Amendment to the Constitution because it constituted a privileged

---

[8] It is apparent that counsel for Defendant had contemplated Defendant testifying at the hearing in order to present evidence about the alleged communication with his divorce attorney but that Defendant subsequently declined to testify. Trans. (Doc. #62) at 45 & 75. At the hearing, counsel admitted that "there is scant to little or no evidence of any correspondence between the attorney and" Defendant. *Id.* at 77.

7

communication with his attorney is not supported by the record and is, therefore, without merit. Defendant makes no other Fourth Amendment claim respecting the search and seizure of evidence at his home. Accordingly, Defendant's Motion to Suppress (Doc. #39) is due to be DENIED.

## V.   CONCLUSION

For all of the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that Defendant's Motion to Suppress (Doc. #39), as Supplemented (Doc. #44), be DENIED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before March 29, 2010**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of*

*Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 15th day of March, 2010.

>/s/ Wallace Capel, Jr.
>WALLACE CAPEL, JR.
>UNITED STATES MAGISTRATE JUDGE